**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **ANTONIO L. BENDER,** | ) | |
| | ) | |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:19-cv-00503** |
| | ) | **Judge Trauger** |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**<u>MEMORANDUM</u>**

Antonio L. Bender filed a pro se motion under 28 U.S.C. § 2255 to vacate, set aside, or correct a sentence previously imposed by this court. *See United States v. Bender*, No. 3:17-cr-00081, Doc. No. 92 (M.D. Tenn. July 10, 2018) [hereinafter cited as "Crim. Doc. No. ___"]. The government filed a response, accompanied by an affidavit from attorney Thomas Drake. (Doc. Nos. 21, 21-1.) The movant then filed letters requesting to add a claim (Doc. Nos. 23–25) and be appointed counsel. (Doc. No. 26.) For the following reasons, the movant is not entitled to relief under Section 2255, his request for counsel will be denied, and this action will be dismissed.

I.      **Background**

An indictment charged the movant with three counts: Count One, being an unlawful user of controlled substances in possession of firearms and ammunition, in violation of 18 U.S.C. §§ 922(g)(3) and 924; Count Two, possessing a stolen firearm, in violation of 18 U.S.C. §§ 922(j) and 924; and Count Three, destroying records with intent to obstruct an investigation, in violation of 18 U.S.C. §§ 1519 and 2. (Crim. Doc. No. 19.) After the movant's first appointed attorney withdrew, the court appointed Thomas Drake to represent him.[1] (Crim. Doc. No. 36.)

---

[1] Mr. Drake is the subject of claims for ineffective assistance of counsel in this Section 2255 proceeding. (*See* Doc. Nos. 1, 2.) Going forward, any reference to the movant's counsel is a reference to Mr. Drake.

Counsel noted the movant's mental health issues and secured a psychological evaluation of the movant by Dr. Lyn McRainey shortly thereafter. (*See* Crim. Doc. No. 82 (sealed psychological evaluation).) Counsel then filed a motion for the movant to plead guilty without a plea agreement. (Crim. Doc. No. 51.) The parties appeared for a plea hearing, but the court postponed the hearing because the movant had not received his mental health medications that day. (Crim. Doc. No. 53.) About a week later, the court accepted the movant's plea to all three counts. (Crim. Doc. Nos. 60, 61.)

In advance of the sentencing hearing, the U.S. Probation Office prepared a Presentence Investigation Report ("PSR") that calculated the movant's sentencing guideline range by applying a cross-reference for attempted first degree murder. *Bender*, No. 3:17-cr-00081, Presentence Report ¶ 29 [hereinafter cited as "PSR ___"]. This cross-reference caused the movant's base offense level to increase from 14 to 33. (PSR ¶¶ 25, 29.) The PSR also applied two enhancements, including one for obstruction of justice. (*Id.* ¶ 33.) Counsel lodged objections to the cross-reference, the obstruction enhancement, and several other aspects of the PSR. (Crim. Doc. No. 79; PSR Addendum.) The government filed a response in support of the Probation Office's calculation. (Crim. Doc. No. 85.)

The court held an evidentiary hearing to determine whether to apply the attempted murder cross-reference and the enhancements based on a preponderance of the evidence. (Crim. Doc. No. 96.) The court heard testimony from six witnesses on these issues (*id.* at 11–158), after which counsel for the government and the movant made additional argument. (*Id.* at 158–71.) The court then found that the cross-reference and enhancements applied, accepting the facts and guideline calculations in the PSR. (*Id.* at 171–73, 206–09, 242–43.) This resulted in a sentencing guideline range of 262 months to 327 months. (PSR ¶ 74.)

2

At this hearing, counsel put on mitigation evidence for sentencing by calling Dr. McRainey, the psychologist who evaluated the movant. (*Id.* at 173–205.) The court then heard statements from the government (*id.* at 205–27), the movant's counsel (*id.* at 227–31), and the movant himself. (*Id.* at 231–42.) The court imposed a total sentence of 144 months' imprisonment. (*Id.* at 242–52.) The government objected to the sentence, but the movant's counsel did not. (*Id.* at 252–53.) Neither the government nor the movant filed a notice of appeal.

## II.    Claims

The Section 2255 motion and supporting memorandum (Doc. Nos. 1, 2) assert several claims, and the movant's letters request to add another claim.[2] (Doc. Nos. 23–25.) The court considers these claims together, rearranged for clarity as follows:

1.  Counsel was ineffective by failing to:

    A.  Argue for a lower sentence based on the movant's mental state (Doc. No. 2 at 4, 6–8, 10);

    C.  Object to stacking of gun charges (Doc. No. 1 at 4; Doc. No. 2 at 3–6);

    D.  Object to sentencing enhancements (Doc. No. 1 at 5; Doc. No. 2 at 4–7, 8–10); and

    E.  File a notice of appeal. (Doc. No. 1 at 4, 6–7.)

2.  The movant's convictions are invalid in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019). (Doc. Nos. 23–25.)

## III.    Legal Standard

"A motion brought under § 2255 must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *United*

---

[2] At this stage in the case, the movant requires the court's leave to amend the Section 2255 motion. *See* Fed. R. Civ. P. 15(a)(1). Courts "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). One of the factors considered when "evaluating the interests of justice" is "'futility of amendment.'" *Oleson v. United States*, 27 F. App'x 566, 569 (6th Cir. 2001) (quoting *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998)). Here, it would be futile for the movant to add the claim raised in his letters, as explained below.

*States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). "When a factual dispute arises in a § 2255 proceeding, an evidentiary hearing is required to determine the truth of the petitioner's claims." *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (internal citations and quotation marks omitted). "An evidentiary hearing is not required," however, "'if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Monea v. United States*, 914 F.3d 414, 422 (6th Cir. 2019) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)).

## IV.  Analysis

The government contends that the movant's claims for ineffective assistance of counsel are without merit (Doc. No. 21 at 2–6), and as explained below, the court agrees. The government does not respond to the proposed *Rehaif* claim raised in the movant's letters, but the court concludes that this claim is meritless as well.

### A.  Ineffective Assistance of Counsel

To prevail on a claim for ineffective assistance of counsel, the movant bears the burden of showing, first, "that his counsel provided deficient performance," and second, that "the deficient performance prejudiced [his] defense." *Sylvester v. United States*, 868 F.3d 503, 509–10 (6th Cir. 2017) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "[A] court deciding an ineffective assistance claim" need not "address both components of the inquiry if the [movant] makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Counsel's performance is deficient where it falls "below an objective standard of reasonableness." *Id.* at 687–88. "'Judicial scrutiny of counsel's performance must be highly deferential,' and should be guided by a measure

4

of 'reasonableness under prevailing professional norms.'" *Sylvester*, 868 F.3d at 510 (quoting *Strickland*, 466 U.S. at 688–89).

To establish prejudice, the movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In the context of sentencing, "[a] movant can establish prejudice by counsel's actions when there is a reasonable probability that petitioner would have avoided even 'a minimal amount of additional time in prison' were it not for counsel's performance at sentencing." *McQueen v. United States*, No. 19-2427, 2020 WL 3052629, at *3 (6th Cir. Mar. 25, 2020) (quoting *Glover v. United States*, 531 U.S. 198, 203 (2001)). A movant, however, "cannot rely on 'pure speculation on whether the outcome of . . . the penalty phase could have been any different.'" *Bradshaw-Love v. Warren*, No. 16-2756, 2017 WL 6541144, at *4 (6th Cir. Dec. 15, 2017) (quoting *Spencer v. Booker*, 254 F. App'x 520, 525 (6th Cir. 2007)).

### 1. The Movant's Mental State

In Claim 1.A, the movant asserts that counsel failed to ensure that the court properly accounted for the movant's serious mental health issues at sentencing, including by failing to file a motion for a downward departure. (Doc. No. 2 at 4, 6–8, 10.) The movant fails to demonstrate both deficiency and prejudice for this claim.

First, the record reflects that counsel was not deficient. After being appointed to represent the movant, counsel obtained the services of psychologist Dr. Lyn McRainey to evaluate the movant. Dr. McRainey conducted a psychological evaluation of the movant by reviewing his records and meeting with him for four-and-one-half hours. (Crim. Doc. No. 96 at 187, 191.) Counsel submitted this report for the court's consideration before the sentencing hearing (Crim.

Doc. No. 82), and he called Dr. McRainey to testify at the hearing to provide mitigating evidence. (Crim. Doc. No. 96 at 173.) Counsel questioned Dr. McRainey regarding her evaluation and opinion of the movant's mental condition (*id.* at 173–81) before eliciting testimony that the movant had "a good chance at being successful" in society if he had appropriate therapeutic support and employment or education support. (*Id.* at 183–84.) Counsel referred to Dr. McRainey's testimony in his subsequent argument requesting a sentence between 51 months and 63 months' imprisonment—a sentence well below the guideline range. (*Id.* at 230–31 ("[A]s the court has heard from expert testimony, . . . [t]here can be services around Mr. Bender so the Court can be assured that once he gets out, he can be a productive member of the community. That also says that the Court does not have to lock Mr. Bender up for 20 years just to protect the public.").) Counsel, in short, made a deliberate effort to bring the movant's mental health issues to the court's attention for sentencing purposes and requested a below-guideline sentence based, at least in part, on these issues. This performance does not fall below an objective standard of reasonableness.

The movant also fails to demonstrate prejudice because the court, in fact, took the movant's mental health issues into account at sentencing. The court was certainly aware of these issues prior to sentencing, as the court postponed the first scheduled plea hearing to ensure that the movant was taking his mental health medications. (*See* Crim. Doc. No. 53.) The movant's mental health issues were also mentioned in the PSR (PSR ¶¶ 59–62), which the court reviewed prior to sentencing and ultimately accepted at the sentencing hearing. (Crim. Doc. No. 96 at 242–43.) The court read Dr. McRainey's psychological report the day before the hearing (*id.* at 174), heard her testimony, and followed up with questioning of its own. (*Id.* at 202–04.) And in pronouncing sentence, the court acknowledged that the movant has "very, very serious mental health issues" (*id.* at 245–46) and relied, in part, on Dr. McRainey's testimony. (*Id.* at 248.) Accordingly, the

movant has not established a reasonable probability that counsel's handling of his mental health issues led to a longer sentence. For all of these reasons, Claim 1.A will be denied.

### 2. Stacking Gun Charges

In Claim 1.B, the movant asserts that counsel was ineffective for allowing him to face stacked gun charges, seemingly arguing that Counts 1 and 2 impermissibly charged him with unlawfully possessing the same Smith & Wesson pistol. (Doc. No. 1 at 4; Doc. No. 2 at 3–6 ("The charges against the petitioner were impermissibly stacked concerning the gun that was in the issued indictment."); Crim. Doc. No. 19 at 1–2.) This argument is baseless, for two reasons.

First, Count 2 mentions just the Smith & Wesson, but Count 1 also charges possession of a Glock pistol and ammunition. (Crim. Doc. No. 19 at 1.) Both the Glock and the ammunition provided potential independent bases to charge the movant with a violation of Section 922(g), as in Count 1. *See* 18 U.S.C. § 922(g) (criminalizing possession of "any firearm or ammunition . . . which has been shipped or transported in interstate or foreign commerce"); *but see United States v. Adams*, 214 F.3d 724, 728 (6th Cir. 2000) (quoting *United States v. Rosenbarger*, 536 F.2d 715, 721 (6th Cir. 1976)) (holding that the government can establish separate violations of Section 922(g) after confiscating multiple weapons only where it shows that "the firearms were stored or acquired at different times or places"). The reference to the Smith & Wesson in Counts 1 and 2, therefore, does not mean that the counts necessarily overlap.

Second, even if the Smith & Wesson pistol were the only weapon mentioned in Counts 1 and 2, the government is free to prosecute a defendant for separate offenses under Section 922(g) (as in Count 1) and Section 922(j) (as in Count 2) based on a single firearm because "each offense requires proof of a fact which the other does not." *United States v. McDaniel*, No. 97-5233, 1998 WL 661106 (6th Cir. Sep. 2, 1998) (quoting *United States v. Vincent*, 20 F.3d 229, 237 (6th Cir.

1994)); *see also United States v. Moye*, 454 F.3d 390 (4th Cir. 2006) ("Unlike the subparts of § 922(g), there is no question in this case that Congress has fixed separate punishments for both § 922(g) and § 922(j)."); *United States v. Mansolo*, 129 F.3d 749, 751 (5th Cir. 1997) ("Clearly, Congress has fixed separate punishments for both § 922(j) and § 922(k)."). That is, Section 922(g) requires proof of a person's prohibited status, while Section 922(j)[3] "requires proof that the firearm in question was stolen." *McDaniel*, 1998 WL 661106, at *3. The movant, therefore, has not demonstrated that he faced impermissibly stacked gun charges. And "counsel 'cannot be ineffective for a failure to raise an issue that lacks merit.'" *Sheppard v. United States*, No. 17-6178, 2018 WL 1738214, at *1 (6th Cir. Mar. 15, 2018) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

In explaining his gun-stacking claim, the movant also mentions the cross-reference for attempted first degree murder that resulted in a significantly increased base offense level when calculating his guideline range. (*See* Doc. No. 2 at 4, 6 ("Mr. Drake was the incorporating factor as to the petitioner's exposure to the impermiss[i]ble stacking of the gun charges, the allowance of the court to start the level at 33 instead of 14 where it was supposed to have started.").) The court liberally construes this as a claim of ineffective assistance regarding the attempted murder cross-reference. The movant, however, has not demonstrated either deficiency or prejudice in this regard.

Counsel objected to application of the attempted murder cross-reference and put the government to its burden of proof. (Crim. Doc. No. 79 at 1–8, 10–14; PSR Addendum Objection #5.) The government put on six witnesses, and counsel cross-examined each of them. (Crim. Doc. No. 96 at 24–32, 52–58, 70–73, 103–13, 129–39, 154–57.) Counsel then made additional argument

---

[3] *McDaniel* mistakenly cites Section 922(k) here, but the context of the opinion makes clear that the cite should be to Section 922(j). *See McDaniel*, 1998 WL 661106 (considering appeal of defendant who pleaded guilty to offenses under Section 922(g) and Section 922(j), not Section 922(k)).

8

that the government had not met its evidentiary burden. (*Id.* at 168–70.) Given counsel's diligent efforts to avoid application of the attempted murder cross-reference, the movant has not shown that counsel's performance was objectively unreasonable.

Moreover, because it was not improper to apply the cross-reference, the movant also fails to show prejudice. District courts determine whether to apply "a cross-reference to a crime not charged in the indictment based upon the preponderance-of-the-evidence standard." *United States v. Rogers*, 261 F. App'x 849, 852 (6th Cir. 2008) (citing *United States v. Brika*, 487 F.3d 450, 454–57, 459 (6th Cir. 2007)). To apply this cross-reference, therefore, the court had to "find[] by a preponderance of the evidence that [the movant] attempted to murder [] with premeditation." *Id.* (noting that U.S.S.G. § 2A2.1(a) incorporates 18 U.S.C. § 1111, which defines first degree murder as "[e]very murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing"). This cross-reference "is applicable only upon 'a finding of the specific intent to kill.'" *United States v. Penaloza*, 648 F. App'x 508, 532 (6th Cir. 2016) (quoting *United States v. Morgan*, 687 F.3d 688, 697 (6th Cir. 2012)).

The government presented sufficient evidence to prove, by a preponderance of the evidence, that the movant attempted to commit a premeditated killing using the firearm(s) he pleaded guilty to possessing on three occasions. The court first determined that the movant attempted to murder Thereon Forman using the Smith & Wesson pistol on March 18, 2017. (Crim. Doc. No. 96 at 171–72.) The movant admitted that he stole the Smith & Wesson prior to March 18 (Crim. Doc. No. 84-2 at 3), and law enforcement recovered casings from the scene of the Forman shooting linked to the Smith & Wesson. (Crim. Doc. No. 96 at 23.) As for the shooting itself, there was evidence that Forman was driving when he sustained gunfire from a vehicle that

pulled up next to him on the street and that the assailant pursued and shot at him again when he attempted to escape on foot. (*Id.* at 100–02; PSR ¶ 18(A).)

The court also found that the movant twice attempted murder using both the Smith & Wesson and the Glock on March 27, 2017. (Crim. Doc. No. 96 at 171–72, 207–08.) In the week prior to that day, the movant posted two pictures on his Facebook page linking himself to these firearms. (*See id.* at 81–82 (March 22 picture of the movant with both pistols); *id.* at 80–83 (March 25 picture of the movant with the Smith & Wesson).) As for the first incident, the movant admitted that he intentionally shot at Freddie Webster because Webster previously sold fake drugs to the movant's friend. (Crim. Doc. No. 84-2 at 3.) Webster and Tammy Vaughn also testified that, around 10:30 p.m., they sustained fire from weapons with red and green laser sights (Crim. Doc. No. 96 at 117–24, 126, 146–47, 149–50)—the same color laser sights on the Smith & Wesson and Glock later recovered from the movant. (*Id.* at 49, 67–68.) As for the second incident, MNPD Officers Jonathan Sheppard and Justin Chisholm testified that, around 11:30 p.m., they heard shots fired and responded. (*Id.* at 41, 62–63.) The officers testified that they approached the movant, saw him holding two guns, and saw him point red and green laser sights at them. (*Id.* at 42–46, 64–65.) The movant fired one shot toward the officers and then ran away. (*Id.* at 42–45, 47–49, 65–67.) The officers pursued the movant, detained him, and recovered the Smith & Wesson and Glock fitted with red and green laser sights. (*Id.* at 48–49, 67–68.) The movant later admitted that he fired at the officers because he thought one was Freddie Webster (at one point in this statement, the movant even referred to Webster as "my victim"). (Crim. Doc. No. 84-1 at 6–7, 11–17.)

Considering all of this evidence, the movant's actions were sufficient to establish his liability for attempted murder by a preponderance of the evidence, and thus it was appropriate for the court to calculate his guideline range using the contested cross-reference. *See United States v.*

*Bradford*, 822 F. App'x 335, 339 (6th Cir. 2020) (citations omitted) (explaining that a court can infer the "specific intent to kill" needed to apply the attempted murder cross-reference "from a defendant firing a gun aimed at an individual" or "group of individuals"). The movant, therefore, suffered no prejudice from his counsel's handling of this issue.

Finally, even assuming, without deciding, that the government did not present sufficient evidence to support application of the attempted murder cross-reference, the movant still fails to show prejudice. Generally, where a district court incorrectly calculates the guideline range and then imposes a sentence below that range, there is a presumption that the defendant still suffered prejudice because the guidelines are the starting point for determining an appropriate sentence. *See Molina-Martinez v. United States*, 578 U.S. 189, 198–201 (2016). It may be inappropriate to presume prejudice, however, where the record shows that the court chose an appropriate sentence "irrespective of the Guidelines range" that it deemed applicable. *See id.* at 200.

Here, the record reflects that the court did not actually sentence the movant based on the range resulting from application of the attempted murder cross-reference. (*See* Crim. Doc. No. 96 at 242–43, 246–47.) Based on the unique facts and circumstances in this case, the court found that a sentence based on that range would be greater than necessary to comply with the purposes of the sentencing statute, 18 U.S.C. § 3553. (*Id.* at 246–50.) Indeed, the court specifically asked the Probation Office to prepare a guideline calculation as "if the attempted murder cross-reference did not apply" (*id.* at 246–47), before imposing a total sentence of 144 months' imprisonment—well below the accepted guideline range of 262 to 327 months. (*Id.* at 243, 250.) The court's on-the-record statements at the sentencing hearing, therefore, reflect that the movant did not suffer prejudice related to any improper application of the attempted murder cross-reference. *See Molina-Martinez*, 578 U.S. at 200–01 (quoting *United States v. Vonn*, 535 U.S. 55, 68 (2002)) ("The

Government remains free to 'poin[t] to parts of the record'—including relevant statements by the judge—'to counter any ostensible showing of prejudice the defendant may make.'").

For all of these reasons, the movant's claim of ineffective assistance related to his counsel's handling of the allegedly stacked gun charges is without merit. Claim 1.B will be denied.

### 3. Sentence Enhancements

In Claim 1.C, the movant asserts that counsel was ineffective for failing to object to duplicative sentence enhancements in the PSR. (Doc. No. 1 at 5; Doc. No. 2 at 9–10 ("Petitioner's attorney was ineffective in allowing the federal government to enhance and duplicate the sentences.").) After applying the attempted murder cross-reference, the PSR included two 2-point enhancements to the base offense level: one for using a person under eighteen to "commit the offense or assist in avoiding detection of, or apprehension for, the offense" (PSR ¶ 32 (applying U.S.S.G. § 3B1.4)); and one for obstruction of justice. (*Id.* ¶ 33 (applying U.S.S.G. § 3C1.1).) Both enhancements were based on the movant's instructing his 17-year-old sister to deactivate his Facebook page and delete incriminating pictures. (*Id.* ¶¶ 32–33.) The movant seems to argue that it was improper to apply these enhancements because they were duplicative of Count 3, destroying records with intent to obstruct an investigation. (*See* Doc. No. 2 at 5 ("The attorney also failed to pursue and follow up on the charge that the court gave the petitioner as to the 'destruction of social media' accounts.").) The movant fails to show deficiency and prejudice for this claim.

Counsel objected to the obstruction-of-justice enhancement on duplicity grounds. (Crim. Doc. No. 79 at 8–9; PSR Addendum Objection #7.) The government put on evidence in support of the enhancement through one witness, and counsel cross-examined him regarding the Facebook page and incriminating pictures. (Crim. Doc. No. 96 at 107–11.) Defense counsel then made additional argument opposing application of the obstruction enhancement. (*Id.* at 170–71.) The

movant thus fails to show that counsel was ineffective for failing to object to duplicative sentence enhancements.

Because the enhancements were not duplicitous, moreover, the movant also fails to show prejudice. Counts 1 and 2 charged the movant with unlawfully possessing guns or ammunition related to the shootings on March 27, 2017, and Count 3 charged him with knowingly destroying or concealing his Facebook page with intent to obstruct a federal investigation of the March 27 shootings. (Crim. Doc. No. 19 at 1–3.) The Section 3B1.4 enhancement applies where a defendant uses a person under eighteen "to commit the offense or assist in avoiding detection of . . . the offense."[4] Thus, it was not duplicitous to apply this enhancement if the government presented a sufficient factual basis to establish, by a preponderance of the evidence, the involvement of the movant's sister in committing Count 3 or avoiding detection of Counts 1 and 2.

As relevant here, the Section 3C1.1 enhancement applies where "(1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation . . . of the instant offense of conviction, and (2) the obstructive conduct related to . . . the defendant's offense of conviction and any relevant conduct." The conduct to which this enhancement applies includes "destroying . . . or directing . . . another person to destroy . . . evidence that is material to an official investigation." *Id.*, cmt. n.4(D).

There was a sufficient factual basis to apply both enhancements by a preponderance of the evidence. Recorded jail calls reflected that the movant called his sister from jail and directed her to deactivate his Facebook page on March 28, 2017—after shooting at Freddie Webster, Officer Sheppard, and Officer Chisholm the night before; after being apprehended and arrested by the officers; and after giving statements to two separate law enforcement groups, including a federal

---

[4] The court's citations to the Sentencing Guidelines are to the 2016 edition applied by the PSR. (PSR ¶ 23.)

agency (the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF)). (PSR ¶ 15; Crim. Doc. No. 96 at 77–79.) The movant's sister did as the movant asked. (*See id.*) The movant, therefore, was aware of an official federal investigation regarding the March 27 shootings when he directed his sister to take down his Facebook page. At least two pictures removed from the movant's Facebook page linked him to the guns used in the March 27 shootings. (*See* Crim. Doc. No. 96 at 81–82 (March 22 picture with Smith & Wesson and Glock); *id.* at 80–83 (March 25 picture with Smith & Wesson).) For purposes of the Section 3B1.4 enhancement, that is sufficient to establish the involvement of the movant's sister in committing Count 3 or avoiding detection of Counts 1 and 2. And because the movant's obstruction or attempted obstruction was related to his offenses of conviction in Counts 1 and 2, it was also proper to apply the Section 3C1.1 enhancement.[5] *See United States v. Davist*, 481 F.3d 425, 427 (6th Cir. 2007) (collecting cases) (holding that the Section 3C1.1 enhancement applies where "a defendant is convicted of a separate count for obstructive conduct"). Accordingly, the movant has not established prejudice from counsel's allegedly failing to challenge the sentence enhancements as duplicitous.

Finally, it is not beyond the bounds of a liberal construction to read the movant's memorandum as raising a general claim of ineffective assistance regarding his sentence enhancements that is not limited to the question of whether they were "duplicative." (*See* Doc. No. 2 at 6 ("Attorney Drake was also ineffective for the allowance of all of the enhancements that the government pursued and that the Probation Department inserted [in] the PSR.").) To that end, the court notes an apparent error regarding the Section 3B1.4 enhancement that went unnoticed by the

---

[5] Application note 8 clarifies that this enhancement applies because the movant's offenses of conviction are closely related and the obstructive conduct in Count 3 occurred with respect to Counts 1 and 2. *See* U.S.S.G. § 3C1.1, cmt. n.8 (explaining that a 2-point increase in the offense level for obstruction is warranted where a defendant is convicted of closely related counts including both "an obstruction offense . . . and an underlying offense (the offense with respect to which the obstructive conduct occurred").

14

parties and the court at sentencing, and that is not explicitly noted by the movant. The movant was 19 years old when he was arrested, and it appears that defendants under the age of 21 are categorically ineligible for this enhancement under Sixth Circuit precedent. *See United States v. Sanders*, No. 20-3963, 2021 WL 4787226, at *5 (6th Cir. Oct. 14, 2021) (discussing *United States v. Butler*, 207 F.3d 839, 850–51 (6th Cir. 2000)) (noting *Butler*'s controlling holding that Section 3B1.4 "could not apply to defendants . . . who are under 21 years old because that application would conflict with the federal law's 'clear Congressional directive' to limit the enhancement to those over 21"). Even assuming that the movant properly raised a claim of ineffective assistance regarding this error, however, he is not entitled to relief because, in the unique circumstances of this case, the error did not prejudice the movant.

As noted in the court's discussion of the attempted murder cross-reference, a defendant who was sentenced following an incorrect guideline calculation ordinarily need not present additional evidence of prejudice, even if he was sentenced below the incorrectly calculated guideline range. *See Sanders*, 2021 WL 4787226, at *5 (quoting *Molina-Martinez*, 578 U.S. at 201) ("'[I]n the ordinary case,' an incorrect guidelines calculation will suffice by itself to establish an effect on a defendant's substantial rights."). This, however, was not an ordinary case. Here, despite accepting the guideline range calculated in the PSR, the court's statements reflected that the sentence imposed was not based on its guideline calculation. (*See* Crim. Doc. No. 96 at 246 ("In terms of how the guidelines shake out in this case, they make little sense to the Court. They are not supported."); *id.* at 247 (stating that a within-range sentence would be "an unreasonable application of the various factors that the Court looks at in sentencing"); *id.* at 250 ("And so to have the obstruction charge hike this guideline even further -- it's obstruction, but it doesn't warrant another ten years of prison for what he did.").) That would not have changed if the

guideline calculation did not include the Section 3B1.4 enhancement.[6] In cases like this one, therefore, a movant must point to something aside from the incorrectly-calculated guideline range to establish prejudice. *See Molina-Martinez*, 578 U.S. at 200 ("The record in a case may show, for example, that the district court thought the sentence it chose was appropriate irrespective of the Guidelines range."); *see also United States v. Helton*, 676 F. App'x 476, 480 (6th Cir. 2017) (declining to apply *Molina-Martinez*'s presumption of prejudice where, as here, the district court explained in detail why it was imposing a sentencing outside the accepted guideline range). The movant makes no other showing of prejudice. Accordingly, the movant has not established a claim of ineffective assistance regarding the Section 3B1.4 enhancement.

For all of these reasons, the movant's claim of ineffective assistance related to his counsel's handling of the sentence enhancements is without merit. Claim 1.C will be denied.

### 4. Notice of Appeal

In Claim 1.D, the movant asserts that counsel was ineffective for refusing to file a notice of appeal. (Doc. No. 1 at 4, 6–7.) This claim is conclusory and directly contradicted by the record, so it will be denied.

Counsel "is per se ineffective if []he disregards a defendant's express instructions to file an appeal." *Neill v. United States*, 937 F.3d 671, 676 (6th Cir. 2019) (citing *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)). "Where the defendant does not instruct counsel to file an appeal, however, the court must ask 'whether counsel in fact consulted with the defendant about an appeal,' which entails 'advising the defendant about the advantages and disadvantages of taking an appeal, and

---

[6] Without this 2-point enhancement, the movant's total offense level would have been 35 (rather than 37), and his criminal history category would have remained III. This would have resulted in a guideline range of 210 to 262 months' imprisonment (rather than 262 to 327 months' imprisonment). *See* U.S.S.G. 5A. The court imposed a total sentence of 144 months' imprisonment, and to be clear, it would have imposed this same sentence if it had calculated the guideline range as 210 to 262 months' imprisonment.

16

making a reasonable effort to discover the defendant's wishes.'" *Doyle*, 631 F.3d at 817–18 (quoting *Flores-Ortega*, 528 U.S. at 478). "If counsel consults with his client, he 'performs in a professionally unreasonable manner *only* by failing to follow the defendant's express instructions with respect to an appeal.'" *Id.* at 818 (quoting *Flores-Ortega*, 528 U.S. at 478).

Here, the court informed the movant of his right to appeal, including that the clerk would file a notice of appeal at his request. (Doc. No. 93-1 at 18.) Counsel submitted an affidavit swearing that, on July 20, 2018, he drove to the facility in which the movant was incarcerated, met with the movant in person, advised him that he could file an appeal, offered to file it for him, and advised him that he risked the possibility of a longer sentence if he appealed. (Doc. No. 21-1 at 1.) The movant, counsel attests, "told [counsel] that he did not wish to file an appeal," so counsel did not do so. (*Id.* at 1–2.) Counsel's testimony is supported by attached documentation reflecting that he emailed the U.S. Marshals Service asking for the movant's facility (*id.* at 3), faxed the facility to request a meeting with the movant (*id.* at 4), and informed the government by email and letter of the movant's decision not to appeal after the meeting. (*Id.* at 6–7.)

The court credits counsel's detailed testimony on this subject. *See Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (footnote omitted) (holding that a district court correctly denied an evidentiary hearing on a claim under Section 2255 where the record consisted of the government's brief and a declaration from the movant's former counsel that contradicted the movant's claim). The record therefore reflects that counsel consulted with the movant and discussed the merits of an appeal. It also reflects that the movant told counsel he did not want to appeal. Given this performance, Claim 1.D must be denied as a matter of law. *See Doyle*, 631 F.3d at 818 ("[B]ecause counsel consulted with Doyle about an appeal and Doyle never instructed him to appeal, counsel's performance was not unreasonable.").

17

### B.     Proposed *Rehaif* Claim

The movant requests to add a claim that his convictions are invalid in light of *Rehaif v. United States*, 139 S. Ct. 2191 (2019). (Doc. Nos. 23–25.) The government did not respond to the movant's request.[7] The court assumes that a movant may raise a *Rehaif* claim in an initial Section 2255 motion. *See Wallace v. United States*, 2020 U.S. App. LEXIS 35141, *5 (6th Cir. Nov. 5, 2020) (citations omitted) ("[I]t is at least arguable that *Rehaif* . . . announced a new substantive rule that applies retroactively to cases on collateral review."); *see also United States v. Kelly*, --- F.4th ----, 2022 WL 2609192, at *2 (5th Cir. July 8, 2022) (citing *Seabrooks v. United States*, 32 F.4th 1375, 1383 (11th Cir. 2022)) (holding that a *Rehaif* claim may be brought in an initial Section 2255 motion even if not in a second or successive Section 2255 motion); *but see Khamisi-El v. United States*, 800 F. App'x 344, 348–49 (6th Cir. 2020) (holding that a *Rehaif* claim may not be brought in a second or successive Section 2255 motion). As explained below, however, it would be futile to add this claim because it is meritless.

The movant pleaded guilty to violating Section 922(g). (Crim. Doc. No. 92 at 1.) Section 922(g) "lists nine categories of individuals for whom it is unlawful to possess firearms." *United States v. Lundy*, No. 20-6323, 2021 WL 5190899, at *3 (6th Cir. Nov. 9, 2021). *Rehaif* held that a Section 922(g) violation requires proof "both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *United States v. Mahaffey*, 983 F.3d 238, 241 (6th Cir. 2020) (quoting *Rehaif*, 139 S. Ct. at 2200).

---

[7] The court declines to sua sponte consider whether the movant's proposed *Rehaif* claim is untimely or procedurally defaulted, as timeliness and procedural default are affirmative defenses that the government has forfeited by not raising them. *See Cradler v. United States*, 891 F.3d 659, 666 (6th Cir. 2018) (citing *Jones v. United States*, 689 F.3d 621, 624 n.1 (6th Cir. 2012)) ("[L]ike the timeliness defense, the United States also failed to raise this procedural default argument in the district court, thereby forfeiting it. Because procedural default is an affirmative defense, rather than a jurisdictional argument, we are not required to consider it once it has been forfeited.").

18

The movant argues that he is eligible for relief under *Rehaif* because he was not (and therefore did not know that he was) a felon. (*See* Doc. No. 24 at 2; Doc. No. 25 at 1.) But felons are just one category of persons prohibits from possessing a firearm under this statute, and here, the relevant category was not felons, but "unlawful user[s] of . . . controlled substance[s]," as listed in Section 922(g)(3) and charged in the indictment. (Crim. Doc. No. 19 at 1.) Accordingly, the movant's felon status is not relevant to his Section 922(g) conviction.

A Section 922(g)(3) conviction requires proof "that the defendant took drugs with regularity, over an extended period of time, and contemporaneously with his purchase or possession of a firearm." *United States v. Bowens*, 938 F.3d 790, 793 (6th Cir. 2019) (quoting *United States v. Burchard*, 580 F.3d 341, 350 (6th Cir. 2009)). Applying *Rehaif*, the defendant must also *know* that he was an "unlawful user[] of a controlled substance." *Id.* at 797. The movant admitted in a post-arrest interview to being a daily user of marijuana since age 12 and a frequent user of cocaine since age 17. (Doc. No. 84-2 at 4 (admitting to smoking marijuana "all day every day" and using cocaine "two to three times per week").) He repeated this marijuana admission to the Probation Office when it prepared the PSR. (PSR ¶ 63.) "[I]t borders on fantastical to suggest that [the movant was] unaware . . . that marijuana was a controlled substance," *see Bowens*, 938 F.3d at 797, but to the extent any doubt persists on this point, the movant was put on notice of that fact when he faced state charges for possessing or casually exchanging a controlled substance after being caught with marijuana well before his arrest. (*See* PSR ¶¶ 40, 45.) *Rehaif*, accordingly, does not offer any relief for the movant's Section 922(g)(3) conviction.

## V. Appointment of Counsel

The court is not required to appoint counsel in a Section 2255 proceeding unless it is necessary for effective discovery or an evidentiary hearing is warranted. *See* Rules Governing

Section 2255 Proceedings 6(a), 8(c). Based on the above analysis, the movant is not entitled to discovery or a hearing. *See Thomas v. United States*, 849 F.3d 669, 680 (6th Cir. 2017) (citations omitted) (holding that a Section 2255 movant is entitled to discovery only "where specific allegations before the court show reason to believe that [he] may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief"); *Powell v. United States*, No. 20-1894, 2021 WL 4241273, at *4 (6th Cir. Apr. 5, 2021) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007)) (holding that a hearing is not needed where "'the record refutes [the movant's] factual allegations or otherwise precludes' relief under § 2255"). Therefore, "the appointment of counsel is discretionary and 'is required only where the interests of justice or due process so require.'" *Powell*, 2021 WL 4241273, at *4 (quoting *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986)). Here, the movant adequately presented his claims, and the record precludes relief, so the appointment of counsel is not warranted.

## VI. Conclusion

For these reasons, the movant is not entitled to relief under Section 2255 and this action will be dismissed.

Because this is a "final order adverse to" the movant, the court must grant or deny a certificate of appealability (COA). Rules Governing Section 2255 Proceedings 11(a). A COA requires "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), meaning "that reasonable judges could disagree with the district court's resolution of his constitutional claims" or "could conclude the issues presented are adequate to deserve encouragement to proceed further." *Savoca v. United States*, 567 F.3d 802, 803 (6th Cir. 2009) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). For the reasons stated throughout the court's analysis, the movant has not satisfied these standards, and the court will deny a COA.

An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge